IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHARLES KELSER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No.: 2:06-CV-818 |
| | ) |
| ALCAZAR SHRINERS, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

This action was commenced on or about September 14, 2006, by the filing of a Complaint in the United States District Court for the Middle District of Alabama by Charles Kelser. Kelser alleges that he is over 19 years of age and is a citizen of the United States and the State of Alabama residing in Montgomery County, Alabama.

The plaintiff alleges that the defendant Alcazar Shriners is a charitable organization doing business as Alcazar Shrine Center located in Montgomery County, Alabama. The plaintiff alleges that Alcazar Shriners is being sued under 42 USC §1981 for money damages and under 42 USC §2000a for prospective injunctive relief and for breach of contract under state law for money damages. The plaintiff further alleges that the defendant Shriners of North America is also a charitable organization doing business as Shriners International located in Tampa, Florida. The plaintiff alleges that Shriners International is the parent company of the Alcazar Shriners and the entity ultimately responsible for its policies and practices. The plaintiff alleges that the defendant Shriners of North America is being sued under 42 USC §1981 for money damages and under 42

USC §2000a for prospective injunctive relief and for breach of contract under Alabama state law for money damages. The plaintiff alleges that the defendant Lee Sims is over 19 years of age and is and was at all material times to the Complaint a citizen of the United States and the State of Alabama. The plaintiff alleges that defendant Sims holds the Alcazar bestowed title of Potentate. Sims is being sued in his official capacity for prospective injunctive relief in his individual capacity for money damages.

## FACTS ALLEGED IN THE COMPLAINT

The plaintiff alleges that the Alcazar Shriners are a "creature" of the defendant Shriners of North America which owns and operates Alcazar Shrine Center in Montgomery, Alabama. The property in question consist of a facility called the "Red Fez" and another simply called the "Old Auditorium", both sited on the same premises. (Plaintiff's Complaint, ¶9.) Alcazar holds the property open to the public for rental for private and public purposes such as gun and knife shows, parties, balls, corporate events and the like. (Plaintiff's Complaint, ¶10.) The plaintiff operates River Region Events, an event planning and coordinating entity. A "one stop shopping center" for social events, concerts, corporate meetings and the like. (Plaintiff's Complaint, ¶12.) On or about June 1, 2006, plaintiff entered into a lease agreement with the defendant, Alcazar Shriners, by and through one of its members. (Plaintiff's Complaint, ¶14.) The lease agreement which is attached to the Complaint was for a period of 19 months, ending January 1, 2008. (Plaintiff's Complaint, ¶15.) The plaintiff alleges he applied for and obtained a liquor license through the Alabama Alcoholic Beverage Control Board and the City of Montgomery to serve alcohol at events at the Alcazar Shrine Temple. (Plaintiff's

2

Complaint, ¶16 and 17.) The plaintiff alleges he also applied for and obtained a food permit. (Plaintiff's Complaint, ¶19.) The plaintiff alleges that he booked the facility for August 4, 2006, for a Latino Night and also booked the facility for another Latino Night on August 25, 2006. (Plaintiff's Complaint, ¶23.) Plaintiff alleges that the Latino Night event was to start at 11:00 p.m. because much of the targeted audience for that event was composed of persons who worked in the food service industry and other employment which would make their attendance at an earlier time impossible. (Plaintiff's Complaint, ¶26.) Plaintiff alleges that he had earlier been informed that he could stay open to 2:00 a.m. Plaintiff alleges that after meeting with Alcazar Shriner representatives, plaintiff was told the facility would be closed at midnight. According to plaintiff, because keeping the event open for a mere one hour would not be economically viable, he was forced to cancel the event. (Plaintiff's Complaint, ¶30.) Plaintiff alleges that Alcazar officials later canceled the subsequent Latino Night scheduled for August 25. (Plaintiff's Complaint, ¶31.) Plaintiff alleges that on August 10, he telephoned Hartin (an Alcazar Shriners representative) to check on the availability of the facility for future events. Plaintiff alleges that he was told by Hartin at that time that he had been advised not to rent either venue to Kelser in the future. (Plaintiff's Complaint, ¶36.) Plaintiff alleges on August 14, Kelser was telephoned by the Alcazar "recorder" and instructed that he should remove his beer coolers from the premises. (Plaintiff's Complaint, ¶37.) On August 16, defendant Sims wrote Kelser a letter saying that his contracts and/or agreements with Alcazar Shriners were terminated 5 business days from receipt of his notification. (Plaintiff's Complaint, ¶38.) Also on August 16, plaintiff Kelser alleges that he met with Chris Miles, who had booked the facility for another Latino Night on August 18. Kelser

was to provide the alcoholic beverages for that party. Miles advised Kelser that defendant Sims had told him that Kelser was no longer allowed to serve alcohol at the Shrine Center and that Alcazar did not want anything to do with Kelser. (Plaintiff's Complaint, ¶39.) According to plaintiff's Complaint, Miles then advised Kelser that Sims said he had canceled the August 18 event because Alcazar did not want any Latinos in the facility. (Plaintiff's Complaint, ¶39.) According to plaintiff, a news reporter contacted Sims who confirmed that he "did not want the Latino community". (Plaintiff's Complaint, ¶40.)

Plaintiff alleges that he has or would have certain rights under the contract he has with the defendants and that those rights give him the right to contract with Latino and/or Hispanic persons. (Plaintiff's Complaint, ¶42.) The plaintiff alleges that the defendants, with racially discriminatory intent, have interfered with Kelser's right to make and/or enforce contracts with Latino and/or Hispanic persons. (Plaintiff's Complaint, ¶46.) Plaintiff alleges that the interference with the contract by the defendants was on the basis of race. (Plaintiff's Complaint, ¶48.)

PLAINTIFF'S CLAIMS

Plaintiff alleges three claims against the defendants in his Complaint.

Count One of the plaintiff's Complaint alleges violation of 42 USC §2000a. Plaintiff alleges that he was a party to a contract with the Alcazar Shriners and Shriners International. The plaintiff alleges that the contract enabled Kelser to form and enforce contracts with Latino and/or Hispanic persons. The plaintiff alleges that the contract also enabled the plaintiff to form and enforce contracts with Chris Miles, who would have, in

turn, formed and enforced contracts with Latino and/or Hispanic persons. The plaintiff alleges that the Alcazar Shrine Center is a place of public accommodation within meaning of 42 USC §2000a. The plaintiff alleges that defendants breached their contract with Kelser and thereby interfered with his right to make and enforce contracts with Latino and/or Hispanic persons. The plaintiff alleges that the breach of the contract was on account of the race of the person with whom Kelser sought to form and enforce contracts. (Plaintiff's Complaint, ¶52-61.)

Count Two of the plaintiff's Complaint alleges race discrimination under 42 USC §1981. Plaintiff alleges that at all times material to the Complaint, he sought to make and form contracts with members of a protected class, Latino or Hispanic. Plaintiff alleges that the defendants interfered with his ability to make and form the said contracts because of race. (Plaintiff's Complaint, ¶62-65.)

Count Three of the plaintiff's Complaint alleges a breach of contract under Alabama law. Plaintiff alleges that he had a valid and binding written agreement with the Alcazar Shriners and the Shriners International. Plaintiff alleges that Alcazar Shriners and Shriners International breached the contract. (Plaintiff's Complaint, ¶66-68.)

## ARGUMENT

It is axiomatic that in every federal case, the party bringing the suit must establish standing to prosecute the action. In essence, the question of standing is whether the litigant is entitled to have the Court decide the merits of the dispute or of the particular issues. *Elk Grove Unified School Dist. v. New Dow*, 542 US 1, 124 Sup. Ct. 2301 (2004).

The plaintiff lacks this necessary standing to prosecute the §1981 and §2000a claims which plaintiff has alleged in this case.

§1981 provides in pertinent part, that "all persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for security of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, liens and exactions of every kind, and to no other." 42 USC §1981. A §1981 action must be based on intentional racial discrimination that affects at least one of the contractual aspects listed in §1981(b), to wit, the making and performance of a contract and the enjoyment of all its benefits, privileges, terms and conditions. To that end, the plaintiff's Complaint must facially assert a prima facie case for alleging a racial discrimination in the context of a contract/commercial business dispute. While there is little case authority concerning the requirements of a prima facie case for cases alleging racial discrimination in context of a contract dispute, the plaintiff must demonstrate that he or she is "a member of the protected class". *McDonnell Douglas Corporation v. Green*, 411 US 792, 93 Sup. Ct. 1817 (1973). A §1981 claim, even though brought in a non-employment context, should be analyzed under the *McDonnell Douglas* framework. 42 USC §1981; see also *Benton v. Cousins Properties, Inc.*, 230 F.Supp 2d 1351 (N.D. GA. 2002).

Here, the plaintiff does not allege in the Complaint that he is a member of the protected class. In fact, on information and belief, the plaintiff is a white male. He asserts his claim pursuant to §1981 on the basis that he had a contract with the Alcazar Shriners which was terminated. Plaintiff alleges that the termination was because the Alcazar

6

Shriners "didn't want the Latino community" and because Alcazar Shriners "did not want any Latinos in the facility". (Plaintiff's Complaint, ¶39.) Plaintiff's claims in this regard are based on third party hearsay statements of Chris Miles and a reporter for WSFA TV. These statements were not made to the plaintiff. As admitted in plaintiff's Complaint, Kelser was informed on August 10, that he could not rent either venue in the future. On August 14, plaintiff was told to remove his beer cooler from the premises. On August 16, Kelser received written notice of termination. The hearsay statements of Chris Miles related to future events after the termination of the contract.

However, the termination of the contract affected more than just the plaintiff's right to contract with Latinos. The termination of the contract affected the plaintiff's right to contract with persons of all races. There is no allegation in the plaintiff's Complaint that the first two events scheduled under the contract (Senior Non-Commissioned Officers Academy Graduation Ceremony and Montgomery Auburn Football Kick-Off Banquet) were carried on to the exclusion of any Hispanics or other racial minorities. In fact, the face of the plaintiff's Complaint clearly indicates that the Alcazar Shriners wanted to cancel the entire lease agreement with the plaintiff affecting not only the scheduled Latino Night but any other event that the plaintiff may have scheduled or contracted to schedule. (Plaintiff's Complaint, ¶38.) While defendants' actions may have interfered with the plaintiff's right to make and enforce contracts with Latino and/or Hispanic persons, it has also interfered with plaintiff's right to make and enforce contracts with persons of all ethnic backgrounds. (Plaintiff's Complaint, ¶46.)

If plaintiff has standing in this action, every breach of a contractual relationship could give rise to a §1981 cause of action if the plaintiff alleged that it interfered with the

plaintiff's ability to make and form contracts with a minority. This is not the intent of a §1981 claim and thusly, the plaintiff does not have standing in this action. While the Latinos or Hispanics who had contracted with the plaintiff or Chris Miles, a third party, may have been affected by the termination of the plaintiff's contract with the Alcazar Shriners, no Latinos or Hispanics (members of a protected class) have asserted a claim.

In addition to the §1981 claim, the plaintiff also alleges racial discrimination in the denial of a public accommodation in violation of 42 USC §2000a. §2000a provides in pertinent part, that "all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion or national origin." To establish a claim under §2000a, a plaintiff must demonstrate that he or she (1) is a member of a protected class, (2) attempted to contract for services and afford himself or herself of the full benefits and enjoyment of a public accommodation, (3) was denied the full benefits or enjoyment of a public accommodation, and (4) such services were available to similarly situated persons outside his or her protected class who received full benefits or were treated better. Here, the plaintiff does not allege in the Complaint that he, as the plaintiff, is a member of a protected class and, again, on information and belief, plaintiff is in fact a white male. Consequently, the plaintiff lacks standing to bring a claim under §2000a. Plaintiff's Complaint alleges that the §2000a claim is brought for prospective injunctive relief to make and form contracts with Latino or Hispanic persons. (Plaintiff's Complaint, ¶4, 5, and Count One.) Since the plaintiff does not allege he is a member of the protected class, he lacks standing to seek such injunctive relief. Furthermore, his ability to contract in the

8

future with Latino or Hispanic persons, as well as persons of other races and national origin, is controlled by his state law claim for breach of contract and whether or not the plaintiff's contract with the Alcazar Shriners is valid and enforceable. Since the contract was terminated by written notice (Plaintiff's Complaint, ¶38), plaintiff's remedy is a claim for compensatory damages pursuant to his state law breach of contract claim. Again, plaintiff's contract was not terminated only for the events involving Latinos or Hispanics, but also for events involving persons of all ethnic backgrounds.

      A motion filed under Rule 12(b)(1), Federal Rules of Civil Procedure, questions the Court's jurisdiction over the subject matter of the case. Motions to Dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. *Morrison v. Amway Corporation*, 323 F.3d 920 (11th Cir. 2003). Where the jurisdiction attack is based on the face of the pleading, the Court merely looks to determine whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the plaintiff's Complaint are taken as truth for the purposes of the motion. *Lawrence v. Dunbar*, 919 F.2d 1525 (11th Cir. 1990). However, the plaintiff bears the burden of demonstrating that the Court has jurisdiction in each and every case. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980). Once subject matter jurisdiction has been questioned, a plaintiff is required to clearly allege facts demonstrating he is a proper party to invoke judicial resolution of the dispute and the exercise of the Court's remedial powers. *Warth v. Seldin*, 422 US 490 (1975). Here, the plaintiff lacks standing because (1) he is not a member of the protected class, (2) there is no case of controversy as required by Article III of the Constitution, (3) the plaintiff has no standing to seek injunctive relief because the facial allegations allege only merely

conjectural or hypothetical threats of future injury and not real or immediate threats, and (4) the facts of the plaintiff's Complaint do not give rise to the inference that future unlawful discrimination will occur. See *Shotz v. Cates*, 256 F.3d 1077 (11th Cir. 2001).

## CONCLUSION

In conclusion, the plaintiff's Complaint pursuant to §1981 and §2000a should be dismissed for failure to state a claim upon which relief may be granted. The plaintiff lacks standing to bring such action pursuant to these federal claims. The plaintiff's only viable claim, a breach of contract claim, should be dismissed without prejudice for the plaintiff to seek relief in the appropriate state forum.

s/N. Gunter Guy, Jr.
**N. GUNTER GUY, JR. (GUY004)**
BALL, BALL, MATTHEWS & NOVAK
Post Office Box 2148
Montgomery, AL 36102
(334) 387-7680
(334) 387-3222 Fax
gguy@ball-ball.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of October, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jay Lewis
Law Offices of Jay Lewis, LLC
P.O. Box 5059
Montgomery, AL 36103

10

   s/N. Gunter Guy, Jr.
OF COUNSEL